1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   BRIAN D. CALHOUN,

11          Plaintiff,                    No. CIV S-09-3075 DAD

12      v.

13   MICHAEL J. ASTRUE,                   ORDER
     Commissioner of Social Security,
14
            Defendant.
15   _____/

16          This social security action was submitted to the court, without oral argument, for

17   ruling on plaintiff's motion for summary judgment.  For the reasons explained below, plaintiff's

18   motion is denied, defendant's cross-motion for summary judgment is granted, and the decision of

19   the Commissioner of Social Security (Commissioner) is affirmed.

20                        **PROCEDURAL BACKGROUND**

21          On April 20, 2007, plaintiff applied for Supplemental Security Income (SSI)

22   under Title XVI of the Social Security Act (Act), alleging disability beginning at birth on April 2,

23   1989, based on an anger problem, depression, and attention deficit hyperactivity disorder

24   (ADHD), as a result of which he "can't be around people."  (Transcript (Tr.) at 147-53, 160.)

25   The application was denied initially on July 16, 2007, and upon reconsideration on November 28,

26   2007.  (Tr. at 80-83, 89-93.)  Pursuant to plaintiff's timely request, a hearing before an

administrative law judge (ALJ) was commenced on October 1, 2008, but was continued at

plaintiff's request so that he could obtain representation.  (Tr. at 66-71, 94.)  Plaintiff,

represented by counsel, subsequently appeared and testified at the administrative hearing on

February 3, 2009.  (Tr. at 26-65.)  Plaintiff's parents also testified at that hearing, as did a

vocational expert.  (Id.)  In a decision issued on May 27, 2009, the ALJ determined that plaintiff

had not been under a disability since April 20, 2007, the date his application was filed.  (Tr. at

14-25.)  The ALJ entered the following findings:

> 1.   The claimant has  not engaged in substantial gainful activity since April 20, 2007, the application date (20 CFR 416.971 *et seq.*).

> 2.   The claimant has the following severe combination of impairments: history of attention deficit hyperactivity disorder (ADHD) (*see, e.g.,* Exhibit 1F, pp. 5-6; Exhibit 2F, p. 7; Exhibit 4F, p. 2; Exhibit 11F, pp. 4 and 6-7; Exhibit 13F, p. 4), intermittent explosive disorder (*see, e.g.,* Exhibit 13F, p. 4), mood disorder, not otherwise specified (*see, e.g.,* Exhibit 2F, p.7; Exhibit 4F, p. 4), borderline intellectual functioning (*see, e.g.,* Exhibit 2F, p. 7; Exhibit 4F, p. 2; Exhibit 13F, p. 4), organic mental disorder, not otherwise specified (*see, e.g.,* Exhibit 2F, p. 7; Exhibit 4F, p. 2), and facet joint arthropathy of the lumbosacral spine (*see, e.g.,* Exhibit 11F, p. 3) (20 CFR 416.920(c)).

> 3.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).

> 4.   After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant is limited to work involving simple instructions and having restricted contact with the public and relatively restricted contact with co-workers, meaning that the claimant is able to work in the presence of others but should not be part of a work team or cooperative work process.

> 5.   The claimant has no past relevant work (20 CFR 416.965).

> 6.   The claimant was born on April 2, 1989 and was 18 years old, which is defined as a "younger individual age 18-44," on the date the application was filed (20 CFR 416.963).

7.     The claimant has a "limited" education and is able to communicate in English (20 CFR 416.964).

8.     Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10.    The claimant has not been under a "disability," as defined in the Social Security Act, since April 20, 2007, the date the application was filed (20 CFR 416.920(g)).

(Tr. at 16-25.)

On September 4, 2009, the Appeals Council denied plaintiff's request for review of the ALJ's decision.  (Tr. at 1-10.)  Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on November 4, 2009.

## LEGAL STANDARD

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence and the proper legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).  The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive.  See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Morgan, 169 F.3d at 599; Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion.  See Jones, 760 F.2d at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum

of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

substantial evidence supports the administrative findings, or if there is conflicting evidence

supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

1335, 1338 (9th Cir. 1988).

        In determining whether or not a claimant is disabled, the ALJ should apply the

five-step sequential evaluation process established under the Social Security regulations.  Title 20

of the Code of Federal Regulations, Section 404.1520, sets forth the test used to assess disability.

See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The five-step process has been

summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is conclusively presumed disabled.  If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

        The claimant bears the burden of proof in the first four steps of the sequential

evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the

sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098

(9th Cir. 1999).

1                           **APPLICATION**

2         Plaintiff seeks an order finding him disabled, reversing the Commissioner's

3 decision, and awarding him disability benefits or, in the alternative, an order remanding for

4 further proceedings.  Plaintiff asserts two errors.  First, plaintiff argues that the ALJ failed to

5 accurately characterize the medical evidence and credit the opinions of the examining and

6 nonexamining psychiatrists and psychologists.  Second, plaintiff contends that the ALJ failed to

7 properly assess his residual functional capacity (RFC) and failed to credit the testimony of the

8 vocational expert (VE) in response to three hypothetical questions that accurately reflected

9 plaintiff's functional limitations.  Each of these arguments is addressed below.

10 **I.**    **ALJ's Characterization of Medical Evidence and Treatment of Medical Opinions**

11         Plaintiff argues that the ALJ did not provide legitimate reasons for rejecting

12 portions of the opinions of Patricia White, M.D., a psychiatrist who examined plaintiff and

13 provided a report of psychiatric evaluation dated February 1, 2009, and a medical source

14 statement dated February 2, 2009, concerning the nature and severity of plaintiff's mental

15 impairments.

16         The weight to be given to medical opinions in Social Security disability cases

17 depends in part on whether the opinions are proffered by treating, examining, or nonexamining

18 health professionals.  Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

19 "As a general rule, more weight should be given to the opinion of a treating source than to the

20 opinion of doctors who do not treat the claimant."  Lester, 81 F.3d at 830.  This is so because a

21 treating doctor is employed to cure and has a greater opportunity to know and observe the patient

22 as an individual.  Smolen v. Chater, 80 F.3d at 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894

23 F.2d 1059, 1063 (9th Cir. 1990).  Of course, the ALJ need not give controlling weight to

24 conclusory opinions supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111,

25 1113-14 (9th Cir. 1999); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

26 /////

1    A treating physician's uncontradicted opinion may be rejected only for clear and

2 convincing reasons, and an opinion controverted by another doctor may be rejected only for

3 specific and legitimate reasons supported by substantial evidence in the record.  Lester, 81 F.3d

4 at 830-31.  In order to meet the burden of setting forth specific, legitimate reasons for giving less

5 weight to the controverted opinion of a treating physician, the ALJ must set out a detailed and

6 thorough summary of the facts and conflicting clinical evidence, explain his or her interpretation

7 of the evidence, and make specific findings.  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir.

8 2002).  In developing the record and interpreting the evidence, the ALJ must explain why any

9 significant probative evidence has been rejected and must reach a decision supported by

10 substantial evidence.  Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003); Vincent v.

11 Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

12    "The opinion of an examining physician is, in turn, entitled to greater weight than

13 the opinion of a nonexamining physician."  Lester, 81 F.3d at 830.  An examining physician's

14 uncontradicted opinion, like a treating physician's, may be rejected only for clear and convincing

15 reasons, and when an examining physician's opinion is contradicted by another doctor, the

16 opinion may be rejected only for specific and legitimate reasons supported by substantial

17 evidence in the record.  Id. at 830-31.  "The opinion of a nonexamining physician cannot by itself

18 constitute substantial evidence that justifies the rejection of the opinion of either an examining

19 physician or a treating physician."  Id. at 831 (emphasis in original).  See id. at 831-32 (holding

20 that the ALJ's rejection of the opinions of a treating physician and an examining psychologist

21 was not warranted where the rejection was based on a nontreating, nonexamining doctor's

22 opinion supplemented only by unsupported and unwarranted speculation that the treating and

23 examining doctors were misrepresenting the claimant's condition or were not qualified to

24 evaluate it); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990) (holding that the nonexamining

25 doctor's opinion "with nothing more" did not constitute substantial evidence for rejecting the

26 opinions of treating or examining physicians); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir.

1   1984) (holding that the report of the nontreating, nonexamining doctor, even when combined

2   with the ALJ's own observation of the claimant at the hearing, did not constitute substantial

3   evidence and did not support the ALJ's decision to reject the examining physician's opinion that

4   the claimant was disabled).

5          Here, the medical opinion evidence does not include a formal opinion by a

6   treating physician but does include the opinions of an examining psychologist and an examining

7   psychiatrist.  In this regard, the state disability agency referred plaintiff in 2007 to James A.

8   Wakefield, Ph.D., for a psychodiagnostic evaluation to aid in the determination of his eligibility

9   for social security benefits.  (Tr. at 246-48.)  Dr. Wakefield was not provided with any medical or

10  school records to review, but he examined and tested plaintiff on June 13, 2007, and produced a

11  psychological evaluation.  (Tr. at 248-51.)  Dr. Wakefield diagnosed plaintiff as suffering from

12  attention deficit hyperactivity disorder (by report, not observed), organic mental disorder, mood

13  disorder, and borderline intellectual functioning.  (Tr. at 251.)  Based on plaintiff's responses to

14  the tests administered, Dr. Wakefield also concluded that plaintiff can follow simple work rules

15  but more complex procedures would present difficulties; he is able to interact with co-workers,

16  supervisors, and the public at a minimally acceptable level; he has no physical impairments; he

17  has a limited ability to reason and make occupational, personal, and social decisions in his best

18  interests; his social and behavioral functioning are affected by emotional factors; his

19  concentration is adequate; his persistence and pace are deficient.  (Id.)

20         In 2008, plaintiff's counsel referred plaintiff to Patricia White, M.D., for a

21  psychiatric evaluation in connection with his appeal regarding his application for SSI.  (Tr. at

22  340.)  Dr. White reviewed medical records from San Joaquin County Mental Health Services

23  dated from September through December 2007; medical records from Dr. Gabriel Tanson,

24  plaintiff's primary care physician from 2001 through 2008; and school records dated 2001

25  through 2005.  (Id.)  Dr. White first interviewed plaintiff on December 28, 2008, but plaintiff was

26  resistive, poorly communicative, withdrawn, and covertly hostile and no testing was performed

during that initial interview.  (Tr. at 341.)  When Dr. White interviewed plaintiff a second time on January 28, 2009, plaintiff was more forthcoming and answered the doctor's questions more adequately; he consented to testing and completed a vocabulary test and a test for current intellectual functioning.  (Id.)  Dr. White also interviewed plaintiff's mother.  (Id.)  Dr. White diagnosed plaintiff as suffering from possible prodromal symptoms of schizophrenic decompensation, intermittent explosive disorder, attention deficit disorder by history, and borderline intellectual functioning with academic retardation.  (Tr. at 343.)  Dr. White concluded that plaintiff needed ongoing psychiatric outpatient treatment for the foreseeable future to address his issues and determine a more precise diagnosis.  (Id.)  Dr. White concluded, on the basis of the information then available to her, that plaintiff was precluded from substantial gainful activity by reason of his mental impairments.  (Id.)  In a separate Medical Source Statement, Dr. White found plaintiff significantly impaired in every work-related mental function, with mild limitations as to a few functions, but moderate or marked limitations as to all the others.  (Tr. at 344-46.)  In Dr. White's opinion, all of the assessed limitations had existed at the assessed severity level since May 2006.  (Tr. at 347.)

The remaining medical opinion evidence consists of a mental residual functional capacity assessment dated July 12, 2007.  (Tr. at 268-71.)  The assessment was performed by Mark Stevenson, Ph.D., a state agency psychologist, and was affirmed on November 27, 2007, by Gina Rivera-Miya, M.D., a state agency psychiatrist.  (Tr. at 270 & 289.)  The assessment form requires the medical professional to record summary conclusions based on evidence in the file.  (Tr. at 268.)  Dr. Stevenson assessed plaintiff as moderately limited in his ability to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extended periods, to sustain an ordinary routine without special supervision, to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to interact appropriately with the general public, to accept instruction and respond

1    appropriately to criticism from supervisors, to get along with coworkers or peers without

2    distracting them or exhibiting behavioral extremes, to respond appropriately to changes in the

3    work setting, and to set realistic goals or make plans independently of others.  (Tr. at 268-69.)

4    Dr. Stevenson assessed plaintiff as not significantly limited in all other work-related mental

5    categories.  (Id.)  In the narrative section of the residual functional capacity assessment, Dr.

6    Stevenson explained that plaintiff's cognitive limitations and mood symptoms may moderately

7    impair his functional capacity in the categories noted above but will not preclude him from

8    performing the particular mental function, and he concluded that "[o]verall, from a mental

9    standpoint, [claimant] is seen as capable of performing simple, unskilled work tasks on a

10   competitive, sustained basis."  (Tr. at 270.)

11            Finally, the treatment notes of Elvis Tanson, D.O., plaintiff's treating physician,

12   reflect an initial diagnosis of ADHD after plaintiff requested testing for ADHD and scored "quite

13   high" for ADHD on May 25, 2006.  (Tr. at 302.)  On December 14, 2006, Dr. Tanson prescribed

14   Adderall for plaintiff's ADHD.  (Id.)  On March 12, 2007, Dr. Tanson diagnosed plaintiff as

15   suffering from ADHD, depression, and "possible bipolar," and noted "needs consults."  (Tr. at

16   301.)  On August 1, 2007, Dr. Tanson diagnosed possible ADHD, possible bipolar disorder, and

17   possible schizophrenia, and referred plaintiff to a psychologist for diagnosis.  (Id.)  On December

18   11, 2007, plaintiff reported to Dr. Tanson that he had seen the psychologist and was given Zoloft

19   for his depression but did not like it and preferred to go back on the Adderall.  (Tr. at 299.)  The

20   treating physician reported that plaintiff tested negative for bipolar disorder.  (Id.)  Dr. Tanson at

21   that time diagnosed ongoing attention deficit hyperactivity, for which he prescribed Adderall.

22   (Id.)  Plaintiff was next seen on March 27, 2008, and was given a refill for the Adderall.  (Id.)

23            The ALJ found that the mental health specialists of record agreed that plaintiff has

24   a severe combination of mental impairments that includes ADHD, intermittent explosive

25   disorder, mood disorder, borderline intellectual functioning, and organic mental disorder.  (Tr. at

26   16.)  In determining whether those mental impairments meet or medically equal the criteria of

any listed impairment, the ALJ gave the greatest weight to the functional assessments of Dr.
Stevenson and Dr. Rivera-Miya, the state agency mental health professionals.  (Tr. at 17.)  In
determining plaintiff's RFC, the ALJ considered plaintiff's own disability and function reports, a
third-party function report by plaintiff's mother, plaintiff's disability report on appeal, plaintiff's
testimony at the administrative hearing, the testimony of plaintiff's parents at the administrative
hearing, treatment record, and medical opinions.  (Tr. at 19-24.)  With respect to the medical
opinions, the ALJ gave the greatest weight to the opinions of Dr. Stevenson and Dr. Rivera-Miya
as reflective of and consistent with the objective medical evidence of record.  (Tr. at 23.)  The
ALJ gave weight to Dr. Wakefield's opinions both directly and indirectly, in that the state agency
mental health professionals incorporated Dr. Wakefield's opinions in their functional
assessments.  (Id.)

The ALJ gave "less weight to the report and opinion from Dr. White" on the
grounds that she was not a treating source, her report "contains numerous inaccuracies or
statements that are contradicted by the documentary record," she assessed plaintiff as moderately
or markedly limited in virtually all of the mental aspects of work but conceded that some of her
diagnoses are speculative or by history only, she performed little by way of clinical testing, her
extreme opinion regarding plaintiff's inability to work was premature in light of her
acknowledgment that treatment would be beneficial to plaintiff, there was no evidence that the
allegedly disabling mental impairments would persist for 12 continuous months or more with
appropriate treatment, and her opinion was contradicted by the opinions of other mental health
professionals of record.  (Tr. at 23-24.)

The court has carefully considered plaintiff's arguments that the ALJ failed to
accurately characterize the medical evidence and failed to give proper credit to Dr. White's
medical opinions.  The opinions of the examining physicians were entitled to greater weight than
the opinions of the nonexamining physicians.  However, Dr. White's opinion was contradicted in
various ways by Dr. Wakefield's opinion, Dr. Tanson's treatment records, documents submitted

by plaintiff and his mother, and the testimony of plaintiff and his parents at the administrative

hearing.  As an opinion contradicted by another medical professional's opinion, Dr. White's

opinion may be rejected for specific and legitimate reasons supported by substantial evidence in

the record.  Here, the ALJ did not reject Dr. White's opinions in their entirety, and he provided

numerous specific reasons for giving less weight to some of her opinions than to others.  (Tr. at

23-24.)

The court is unable to find that the ALJ improperly characterized the medical

evidence of record, and it appears that substantial evidence supports most of the ALJ's stated

reasons for discounting Dr. White's opinions to the extent that they conflicted with Dr.

Wakefield's opinions and with the state agency medical professionals' assessments based on Dr.

Wakefield's opinions.

It must be kept in mind that the court's scope of review of decisions granting or

denying Social Security disability is limited.  Hall v. Sec'y of Health, Educ. & Welfare, 602 F.2d

1372, 1374 (9th Cir. 1979) (observing that Congress has mandated a very limited scope of

judicial review of the Commissioner's decisions granting or denying Social Security disability

benefits).  The court must consider the record as a whole, taking into account both the evidence

that supports and the evidence that detracts from the Commissioner's decision; it is not the

court's role to re-weigh the evidence or substitute its own judgment for the Commissioner's.

Winans v. Bowen, 853 F.2d 643, 644-45 (9th Cir. 1987).  Moreover, if there is conflicting

evidence supporting a finding of either disability or nondisability, the ALJ may resolve the

conflict so long as there is "more than one rational interpretation of the evidence."  Sprague, 812

F.2d at 1230.  See also Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir.

1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if

the evidence can support either outcome, the court may not substitute its judgment for that of the

ALJ.").

In this instance, the court finds conflicting evidence and more than one rational

interpretation of the evidence.  The court cannot substitute its own judgment for that of the

ALJ's.  Accordingly, the court finds that plaintiff is not entitled to summary judgment in his

favor on the argument that the ALJ failed to accurately characterize the medical evidence and

failed to properly credit the opinions of the examining and nonexamining psychiatrists and

psychologists.

II.     **ALJ's RFC Assessment and Hypothetical Questions Posed to VE**

            Plaintiff's second argument is that the ALJ failed to properly assess plaintiff's

RFC and failed to credit the testimony of the VE in response to three hypothetical questions that

accurately reflected plaintiff's functional limitations.

            A claimant's RFC is "the most [the claimant] can still do despite [his or her]

limitations."  20 C.F.R. § 404.1545(a).  The assessment of RFC must be "based on all the

relevant evidence in [the claimant's] case record."  Id.  See also Mayes v. Massanari, 276 F.3d

453, 460 (9th Cir. 2001).  Here, plaintiff's argument concerning the ALJ's assessment of his RFC

is predicated on his contention that the ALJ did not properly credit Dr. White's opinion of

plaintiff's mental RFC.  The court has found no reversible error with regard to the ALJ's

treatment of Dr. White's opinion and therefore also finds no error in the ALJ's assessment of

plaintiff's RFC.

            The court also finds that the ALJ's hypothetical questions were properly based on

his RFC assessment and appear to have been supported by substantial evidence in the record.

The questions fairly incorporated the limitations assessed in Dr. Wakefield's opinion.  (Compare

tr. at 58-59 & 63 with tr. at 251.)  Thus, plaintiff is not entitled to summary judgment in his favor

with respect to his second argument because the ALJ's determination of his RFC was proper and

the hypothetical questions the ALJ posed to the vocational expert based upon that RFC

determination were not deficient.  See Holohan v. Massanari, 246 F.3d 1195, 1208-09 (9th Cir.

2001) (ALJ is required to question a vocational expert in a manner that properly takes into

account the limitations on the plaintiff's abilities to engage in various work-related functions).

**CONCLUSION**

The undersigned has found that plaintiff is not entitled to summary judgment on either of his arguments.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's October 20, 2010 motion for summary judgment (Doc. No. 20) is denied;

2. Defendant's January 19, 2011 cross-motion for summary judgment (Doc. No. 25) is granted; and

3. The decision of the Commissioner of Social Security is affirmed.

DATED: March 31, 2011.

_Dale A. Drozd_

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:kw
Ddad1/orders.socsec/calhoun3075.order